John M. Bray                                                    **DETAINED**
The Law Office of John M. Bray, PLLC.
1910 Pacific Ave., Ste. 8065
Dallas, TX 75201


## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## OFFICE OF THE IMMIGRATION JUDGE
## 1100 COMMERCE STREET, 10TH FLOOR
## DALLAS, TEXAS 75242

---

In the Matter of:

JORGE ANTONIO GUERRA QUEZADA,              File No. 098-102-097

In Removal Proceedings.

---

Immigration Judge                          Individual Calendar Hearing Set On:
Hon. Shelly Schools                        August 26, 2021 at 1:00 p.m.


## **RESPONDENT'S MOTION TO TERMINATE OR DISMISS PROCEEDINGS**

Plaintiff's Exhibit "F"

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**OFFICE OF THE IMMIGRATION JUDGE**
**1100 COMMERCE STREET, 10TH FLOOR**
**DALLAS, TEXAS 75242**

| | |
|---|---|
| **In the Matter of:** ) | |
| ) | |
| **JORGE ANTONIO GUERRA QUEZADA,** ) | **File No. 098-102-097** |
| ) | |
| **Respondent.** ) | |

## RESPONDENT'S MOTION TO TERMINATE OR DISMISS PROCEEDINGS

**TO THE HONORABLE IMMIGRATION JUDGE:**

COMES NOW Respondent, Jorge Antonio Guerra Quezada ("Mr. Guerra"), by and through the undersigned Counsel, and hereby moves for termination and/or dismissal of his removal proceedings on the basis that Mr. Guerra is likely a United States Citizen. As such, this Court lacks jurisdiction to

Although Respondent conceded to the charge of removability contained in his Notice To Appear (*hereinafter* "NTA"), new evidence has come forth for which Respondent now contends that he was improperly charged as a deportable alien when, in fact, he likely acquired United States Citizenship at birth, or alternatively, that he automatically derived United States Citizenship upon his admission to the United States as a Lawful Permanent Resident on February 23, 2005, as he was the immediate relative of a U.S. Citizen and was under the age of 18 years at the time.

### I.    FACTUAL BACKGROUND

Mr. Guerra was born in Matamoros, Tamaulipas, Mexico on February 15, 1993, the son of Jorge Guerra Vazquez and Maria Guadalupe Quezada. Mr. Guerra was petitioned by his family

Plaintiff's Exhibit "F"

and eventually admitted to the United States in the "F27" category upon presenting himself for inspection at the port of Hidalgo, Texas. *See* Form I-213, Record of Deportable/Inadmissible Alien. Since that time, Mr. Guerra has lived in the United States for his entire life, until his placement in removal proceedings following his plea of guilty to Online Solicitation of a Minor in Dallas County, Texas in January 2019. *See* Form I-213. Consequently, DHS issued an NTA alleging Mr. Guerra was a native and citizen of Mexico and a Lawful Permanent resident and charging him as deportable for having committed a crime of child abuse and subject to removal under Section 237(a)(2)(E)(i) of the Act. *See* NTA.

In the ensuing months, Yadira Juarez, co-counsel for the undersigned Counsel investigated claims by Mr. Guerra's family that relate to his family's long ties to this country, and eventually, the undersigned Counsel discovered evidence that clearly establishes that Mr. Guerra's grandfather, Antonio Guerra Rodriguez ("Antonio"), acquired U.S. Citizenship at birth by virtue of his mother's birth in Kansas in 1924 and her residence in the United States prior to Antonio's birth in Mexico on June 13, 1944. *See* Ex. A, Affidavit of Antonio Guerra Rodriguez.

Antonio, who is now 76 years old, has provided an Affidavit recounting his family's struggle to obtain lawful status in the United States. Especially appalling was the fact that his mother, Cruz Rodriguez Vargas ("Cruz"), was refused entry to the United States on multiple occasions, despite the fact that she was born in Herrington, Kansas in 1924. *See* Ex. A at 1-2. Despite the fact that Cruz's father had valiantly served the United States in World War I and that Cruz's brothers had served the United States in World War II, Cruz herself was not even permitted to re-enter the United States after living in Mexico. *See* Ex. A at 2. Indeed, an immigration officer refused to permit Cruz to enter, telling her that she had "abandoned her residency," Ex. C, despite the fact that she was a *U.S. Citizen* and *not* a Lawful Permanent Resident. *See* Ex. A at 2. Antonio

3

Plaintiff's Exhibit "F"

further relates that, after several failed attempts to re-enter the United States and resume her life her, he recalls his mother, Cruz, becoming disheartened; but after some relatives in Mexico encouraged her to pursue her claim to U.S. Citizenship, Cruz moved the entire family in the early 1950s from Guanajuato to Matamoros, Tamaulipas—right along the U.S.-Mexico border—for the sole purpose of being closer to her native homeland so that she could more easily attempt to obtain formal recognition of her U.S. Citizenship and eventually petition her family. *See* Ex. A at 2. It was not until years later that Cruz finally obtained some recognition that she was a U.S. Citizen, but the damage had already been done—because she was refused entry in the early 1940s, Cruz was in Mexico when she gave birth to Antonio, *i.e.*, Mr. Guerra's paternal grandfather, despite her clear desire and intent to pass on her U.S. Citizenship to her children.

Moreover, Mr. Guerra's own father, Jorge Guerra Vazquez ("Jorge Sr."), has provided an affidavit stating that he has tried multiple times to obtain the birth certificate of his paternal grandmother from the civil registry in Guanajuato, Mexico but that he has not been able to reach anyone. *See* Ex. B at 1. Jorge Sr. also states that he has sought a copy of his grandmother's marriage certificate from the Mexican Consulate in Dallas, Texas, but that they have told him that "marriage certificates issued in Mexico must be requested in the respective office, the civil registry, in the state in which it was issued." *See* Ex. B at 1. To try to resolve this issue, Jorge Sr. further attempted to request the marriage certificate from the civil registry in Guanajuato, Mexico, by hiring a family friend and attorney, Filiberto Molina Maldonado, to request a copy of his paternal grandmother's marriage certificate from the authorities in Guanajuato, but that the staff of the civil registry in Guanajuato have become overwhelmed with requests for death certificates as a consequence of the COVID-19 Pandemic. *See* Ex. B at 1-2.

Plaintiff's Exhibit "F"

Nonetheless, on information and belief that Antonio's mother and father were not legally married at the time of Antonio's birth, Jorge Sr. recently filed a Form N-600 with U.S. Citizenship & Immigration Services, seeking a Certificate of Citizenship formally recognizing that he automatically acquired U.S. Citizenship at birth through his father, Antonio Guerra Rodriguez, who in turn automatically acquired U.S. Citizenship through his mother, Cruz Rodriguez Vargas.

## II.    LEGAL STANDARD

"It is well settled that an Immigration Judge may only terminate proceedings when the DHS cannot sustain the charges of removability or in other specific circumstances consistent with the law and applicable regulations." *Matter of J-A-B- & I-J-V-A-*, 27 I&N Dec. 168, 169 (BIA 2017) (internal quotations and citations omitted). In removal proceedings, there is a presumption of alienage for persons born abroad. *Matter of Tijerina-Villarreal*, 13 I&N Dec. 327, 330 (BIA 1969). However, if the presumption is overcome, the burden of proof shifts to the government. *Id.* Absent discrepancies in the evidence, where a claim of derivative citizenship has "reasonable support," it will not be rejected. *Murphy v. INS*, 54 F.3d 605 (9th Cir. 1995).

"The regulations also allow immigration judges to terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition . . . when the alien has established prima facie eligibility for [the relief sought] and the matter involves exceptionally appealing or humanitarian factors . . . ." *Matter of S-O-G-*, 27 I&N Dec. at 466. "[A]n immigration judge may [also] dismiss the proceedings where the Notice to Appear was improvidently issued . . . ." *Id.* (internal quotations and alterations omitted). If a motion to terminate is granted, dismissal of the matter is generally without prejudice to the respondent or DHS. *See* 8 C.F.R. § 1239.2(f). If a court determines, at any time, that it lacks jurisdiction, then it must terminate the proceedings. *See generally* INA § 240(c); *see also* 8 C.F.R. § 1003.14 (concerning jurisdiction).

Plaintiff's Exhibit "F"

### III.   ARGUMENT

Generally, under the 8 U.S.C. § 301(c)–(e) & (g)–(h), a child acquires United States citizenship *by automatic operation of law* where one or both of his parents are United States citizens. A child who acquires citizenship at birth does not need a certificate of citizenship. *United States v. Smith-Baltiher*, 424 F.3d 913, 920-21 (9th Cir. 2005) (rejecting the government's contention that defendant could not assert derivative citizenship because he did not have a certificate and because only the AG/Secy. of DHS can determine acquisition at birth). However, a putative citizen's claim to automatic acquisition of citizenship at birth depends on the legal regime in place at the time of his or her birth.

In the present case, Mr. Guerra contends that he acquired U.S. citizenship through his father, Jorge Sr., who in turn automatically acquired U.S. Citizenship at birth through his own mother, Cruz Rodriguez Vargas, who was a native-born U.S. Citizen. Specifically, it is clear that Antonio claims that when Cruz gave birth to him in Mexico on June 13, 1944, she was not yet formally married to Antonio's father, so Antonio's obtained U.S. Citizenship under Section 205 of the Nationality Act of 1940 ("NA"). *See generally* 8 FAM 301.6-5(D) (consular guidance for adjudication of citizenship claims under former NA § 205); *see also Hernandez Rosales v. Lynch*, 821 F.3d 625 629-30 (5th Cir. 2016) (discussing whether "out-of-wedlock" is defined by foreign or U.S. law). However, even if Cruz *were* married to Antonio's father, she was nonetheless constructively present in the United States for the purpose of transmitting U.S. Citizenship to Antonio at the time of his birth in Mexico on June 13, 1944. *See Matter of Navarrete*, 12 I&N Dec. 138 (BIA 1967). Either way, Antonio acquired U.S. Citizenship at birth.

Likewise, although it is possible that Antonio was not actually physically present in the United States for at least ten years, five of which were after reaching the age of 16, prior to the

6

birth of Jorge Sr. in 1972, Antonio need not show *actual* physical presence in order to transmit citizenship to Jorge Sr. This is due, in large part, to the fact that Antonio and his mother, Cruz, should be deemed to have been *constructively* present in the United States from at least 1957, when Cruz moved the family to Tamaulipas, until approximately 1974, when Antonio was permitted to enter the United States as a farmworker. *See* Ex. A at 2-3.

Therefore, Antonio was constructively present for at least ten years from 1957 to 1972, and he reached the age of in June 1960, thus satisfying the physical presence requirement for the purposes of transmission of U.S. citizenship prior to the birth of Jorge Sr. in 1972 under INA § 301(g) [former INA § 301(a)(7)]. This is especially true in light of the U.S. government's refusal to permit Cruz to enter the United States under the pretext that she had "abandoned her residence"—a clear signal of false information knowingly provided by a governmental official to dissuade Cruz from exercising the rights implicit in U.S. Citizenship. *Compare* Ex. C, Immigration Manifest; *with Matter of Navarrete*, 12 I&N Dec. 138 (BIA 1967) (constructive physical presence recognized where U.S. government officials prevented a parent from entering the U.S. because of an erroneous interpretation of law); *and Matter of Farley*, 11 I&N Dec. 51 (BIA 1965); *and Matter of Yanez-Carrillo*, 10 I&N Dec. 366 (BIA 1963).

Because Mr. Guerra's paternal grandfather, Antonio, was clearly a United States citizen from birth, the question becomes whether Antonio also transmitted his U.S. Citizenship to Mr. Guerra's father, Jorge Sr. Although Antonio did not realize that he was a U.S. Citizen from the moment of his birth, the reasoning *Matter of Farley* should nonetheless extend to Jorge Sr., Because Respondent is very likely a U.S. Citizen, this Court should conclude, as a matter of law, that it lacks jurisdiction to preside over Respondent's removal proceedings and therefore, the Court should either terminate removal proceedings or dismiss the case.

Plaintiff's Exhibit "F"

## IV.    CONCLUSION

Respondent has established that he is likely a United States Citizen, and therefore, he cannot be subject to removal proceedings under INA § 240. Therefore, DHS cannot sustain the charge of inadmissibility and the NTA issued is legally deficient and warrants termination or dismissal of Respondent's removal proceedings. Accordingly, the Court should grant the instant motion and either terminate or dismiss Respondent's proceedings, so that he may submit a Form N-600 application for a Certificate of Citizenship with USCIS.

DATE: August 26, 2021.

Respectfully submitted,

THE LAW OFFICE OF JOHN M. BRAY, PLLC
1910 Pacific Ave., Ste. 8065
Dallas, Texas 75201
Tel: (855) 566-2729
Fax: (214) 960-4164
Email: john@jmblawfirm.com

By:    _John M. Bray_
John M. Bray
Texas Bar No. 24081360

ATTORNEY FOR RESPONDENT

Plaintiff's Exhibit "F"

**Respondent:** **Jorge Antonio Guerra Quezada**
**File No.** **A098-102-097**

## INDEX OF SUPPORTING DOCUMENTS

| Exhibit | Description | Page(s): |
|---------|-------------|----------|
| A | Affidavit of Antonio Guerra Rodriguez | 1-10 |
| B | Affidavit of Jorge Guerra Vazquez | 11-13 |
| C | Evidence of "Abandoned Residence" | 14 |

Plaintiff's Exhibit "F"

# EXHIBIT A

Plaintiff's Exhibit "F"

STATE OF TEXAS              §
                           §
COUNTY OF DALLAS           §

## AFFIDAVIT OF ANTONIO GUERRA RODRIGUEZ

BEFORE ME, the undersigned authority, on this day personally appeared ANTONIO GUERRA RODRIGUEZ who, after being duly sworn by me, stated the following under oath:

"My name is Antonio Guerra Rodríguez. My home address is, 3100 Shenandoah Drive, Arlington, Texas 76014, and my telephone number is (817) 501-2085. I have personal knowledge of the facts contained herein, and I am competent to make this statement. I am providing this statement in support of my son's, Jorge Guerra Vazquez, claim to U.S. citizenship."

"I was born on June 13, 1944 in Las Liebres, Romita, Guanajuato, Mexico to Benigno Guerra Ortiz and Cruz Rodriguez Vargas. I am the first-born of nine children. Although my parents always told others that they were married, I have never seen their marriage certificate. I have also never seen any photographs showing that my parents married through the church."

"I honestly do not know if my parents were married at the time of my birth. In those times and even know, it is very common in Mexico for people to be considered married when they begin living together. Although my wife, Paula Vazquez, and I did not marry under civil law until July 11, 1964, we had been living together since at least 1961. Our first son, Manuel Salvador Guerra Vazquez, was born on June 21, 1962."

"My mother always maintained that she was born and raised in the United States. However, my mother struggled for most of her life to get the United States government to acknowledge her citizenship. My mother told me of the many struggles she faced, including the family separation she suffered, as a result of this. I know that my mother considered the United States as her home

**Affidavit of Antonio Guerra Rodriguez**                                    1

and wanted to live here before my birth and even after I was born but could not do so because the government told her that she was not a U.S. citizen."

"My mother had three brothers who were also born in the United States. She was very close with her older brother, Gabriel Rodriguez Vargas, but they lost touch once he began living in California and she was forced to stay behind in Mexico at that time. They reunited years later after my mother put out a radio announcement looking for him in the United States after I was born. My attorney recently showed me documents proving that my mother had tried to enter the United States as a citizen sometime in 1940 but could not do so because she had 'abandoned her residency.' I do not know what it means but it makes sense that this occurred because my mother always talked about her struggles to be recognized as a U.S. citizen when her brothers were."

"Also, my mother and father moved our family from the state of Guanajuato to the border state of Tamaulipas, at the advice of a relative, for the sole purpose of presenting herself at the U.S./Mexico border. In the early 1950's, my family moved from Guanajuato to the state of Michoacan with family members who lived there due to severe droughts in Guanajuato during that time. I remember my mother showing those relatives documents showing that she was a citizen of the United States. I do not know what documents my mother showed them that prompted them to urge her to present herself at the border because she was a U.S. citizen. As a result of this advice, we moved to Tamaulipas in 1957. I do not remember what happened regarding my mother and her claim to citizenship. All I know is that we were forced to stay in Tamaulipas and my mother lived there until at least 1974."

"While living in Tamaulipas, my mother would travel back and forth between the United States and Mexico on a weekly basis to shop for groceries. Sometimes she would take me or one of my siblings with her on these shopping trips. At one point in time, my mother was working two

**Affidavit of Antonio Guerra Rodriguez**                                                                 2

Plaintiff's Exhibit "F"

days out of the week in Brownsville, Texas. I do not remember where or who she worked for. This was the case, despite my father not wanting her to work, because we needed to eat or otherwise go hungry."

"In those days, we simply showed up at the border and asked to enter the United States. The border patrol officer would ask us why we wanted to enter the country, we said for shopping or business dealings, and they simply let us enter. Other times, the border patrol officer would not ask any questions and would simply allow us to enter the United States. Therefore, I frequently traveled back and forth from Mexico to the United States for any little thing. Despite my advanced age, I remember all these details very clearly even if I cannot remember the exact dates."

"Sometime in the early 1970's, after my mother had reunited with her brothers living in California, my father and I went to live with my uncles in the United States. We lived in California up until my father's death in October 1975. My mother did not stay in Mexico while my father and I were living and working in California, however. She began living with my brothers on a ranch near Brownsville, Texas. She never lived in Mexico again after my father and I left for California."

"I sincerely believe my mother attempted to enter the United States as a citizen before my birth but was not allowed to enter the country because an immigration officer or some other U.S. government official wrongly told my mother that she was not a U.S. citizen for whatever reason. Over the years and after so many attempts, I also believe that my mother gave up trying to prove her citizenship. It was not until after my father died that I finally convinced my mother to try again so my siblings and I could enter the United States."

"If the U.S. government had taken my mother seriously and actually considered her statements and documents regarding her citizenship claim, I truly believe my siblings and I would have been born in the United States. My mother loved this country. Her family loved this country.

**Affidavit of Antonio Guerra Rodriguez**

3  ③

My grandfather, Teodoro Rodriguez, registered to serve in World War I. My uncles also registered and served in World War II. I fondly recall my mother telling us stories of how they did not have a real home in Kansas but lived in boxcars since my grandfather worked for a railroad company. I recently found out that my grandmother, Eleuteria Vargas, was buried in Herington, Kansas."

"Even if I had not been born in the United States, I know that my children would have been born in this country if only the government had recognized that my mother was a U.S. citizen in 1957, when we moved to Tamaulipas for the sole purpose of my mother showing her citizenship papers to a U.S. government official. At the very least, I know that my mother would have filed the appropriate paperwork for her children to lawfully enter the United States much earlier than she did. This means that I would have physically present in this country for the time period required for my son's, Jorge Guerra Vazquez, citizenship claim."

"I swear that the facts contained in the foregoing statement are true and correct to the best of my knowledge and belief."

_____
Antonio Guerra Rodriguez

SWORN AND SUBSCRIBED before me this _____ day of _____, 2021.

_____
Notary Public in and for
The State of Texas

**Affidavit of Antonio Guerra Rodriguez**                                                                 4

Plaintiff's Exhibit "F"

## CERTIFICATE OF TRANSLATION

I, Alexa Romero Rossoni, am competent to translate from Spanish to English, and certify that the translation of "Affidavit of Antonio Guerra Rodriguez" is true and accurate to the best of my abilities.

**Alexa Romero Rossoni**
**Av. Sta Fe 105**
**Santiago de Querétaro, México**

**ESTADO DE TEXAS**          §
                             §
**CONDADO DE DALLAS**        §

### DECLARACIÓN JURADA DE ANTONIO GUERRA RODRÍGUEZ

ANTE MÍ, la autoridad que suscribe, en este día compareció personalmente ANTONIO GUERRA RODRÍGUEZ quien, después de haber sido debidamente juramentado por mí, declaró lo siguiente bajo juramento:

"Me llamo Antonio Guerra Rodríguez. Mi dirección es 3100 Shenandoah Drive, Arlington, Texas 76014, y mi número de teléfono es (817) 501-2085. Tengo conocimiento personal de los hechos contenidos en esteo documento, y soy competente para hacer esta declaración. Estoy proporcionando esta declaración en apoyo del reclamo de mi hijo, Jorge Guerra Vázquez, para la ciudadanía estadounidense."

"Nací el 13 de junio de 1944 en Las Liebres, Romita, Guanajuato, México, siendo hijo de Benigno Guerra Ortiz y Cruz Rodríguez Vargas. Soy el primogénito de nueve hijos. Aunque mis padres siempre les dijeron a los demás que estaban casados, nunca he visto su acta de matrimonio. Tampoco he visto ninguna fotografía que muestre que mis padres se casaron a través de la iglesia."

"Honestamente no sé si mis padres estaban casados al momento de mi nacimiento. En esos tiempos e incluso ahora, es muy común en México que las personas se consideren casadas cuando comienzan a vivir juntos. Aunque mi esposa, Paula Vázquez, y yo no nos casamos por el civil hasta el 11 de julio de 1964, habíamos estado viviendo juntos desde al menos 1961. Nuestro primer hijo, Manuel Salvador Guerra Vázquez, nació el 21 de junio de 1962."

"Mi madre siempre insistió que nació y creció en los Estados Unidos. Sin embargo, mi madre luchó durante la mayor parte de su vida para que el gobierno de los Estados Unidos

**Declaración Jurada de Antonio Guerra Rodríguez**                                    **1**

Plaintiff's Exhibit "F"

reconociera su ciudadanía. Mi madre me contó las muchas luchas que enfrentó, incluyendo la separación familiar que sufrió, como resultado de esto. Sé que mi madre consideraba a los Estados Unidos como su hogar y quería vivir aquí antes de mi nacimiento e incluso después de que yo naciera, pero no podía hacerlo porque el gobierno le dijo que no era ciudadana estadounidense."

"Mi madre tenía tres hermanos que también nacieron en los Estados Unidos. Ella era muy apegada a su hermano mayor, Gabriel Rodríguez Vargas, pero perdieron contacto una vez que él comenzó a vivir en California y ella se vio obligada a quedarse en México en ese momento. Se reunieron años más tarde después de que mi madre publicara un anuncio en la radio buscándolo en los Estados Unidos después de que yo nací. Mi abogado recientemente me mostró documentos que prueban que mi madre había tratado de entrar a los Estados Unidos como ciudadana en algún momento en 1940, pero no pudo hacerlo porque había 'abandonado su residencia.' No sé lo que significa, pero tiene sentido que esto ocurriera porque mi madre siempre hablaba de sus luchas para ser reconocida como ciudadana estadounidense cuando lo eran sus hermanos."

"Además, mi madre y mi padre mudaron a nuestra familia del estado de Guanajuato al estado fronterizo de Tamaulipas, en base al consejo de un familiar, con el único propósito de presentarse en la frontera entre Estados Unidos y México. A principios de la década de 1950, mi familia se mudó de Guanajuato al estado de Michoacán con familiares que vivían allí debido a las severas sequías en Guanajuato durante ese tiempo. Recuerdo a mi madre mostrando a esos parientes documentos que demostraban que era ciudadana de los Estados Unidos. No sé qué documentos le mostró mi madre a ellos que la impulsaron a que se presentara en la frontera porque era ciudadana estadounidense. Como resultado de este consejo, nos mudamos a Tamaulipas en 1957. No recuerdo lo que pasó con respecto a mi madre y su reclamo de ciudadanía. Todo lo que

**Declaración Jurada de Antonio Guerra Rodríguez**                                    2

Plaintiff's Exhibit "F"

sé es que nos vimos obligados a quedarnos en Tamaulipas y mi madre vivió allí por lo menos hasta 1974."

"Mientras vivía en Tamaulipas, mi madre iba a los Estados Unidos y volvía a México cada semana para comprar alimentos. A veces me llevaba a mí o a uno de mis hermanos con ella en estos viajes de compras. En un momento dado, mi madre trabajaba dos días a la semana en Brownsville, Texas. No recuerdo dónde ni para quién trabajaba. Esto era así, a pesar de que mi padre no quería que ella trabajara, porque necesitábamos comer o pasar hambre."

"En esos tiempos, simplemente nos presentábamos en la frontera y solicitábamos la entrada a Estados Unidos. El oficial de la patrulla fronteriza nos preguntaba por qué queríamos entrar al país y simplemente nos dejaban entrar. Otras veces, el oficial de la patrulla fronteriza no hacia ninguna pregunta y simplemente nos permitía ingresar a los Estados Unidos. Por lo tanto, viajaba con frecuencia de ida y vuelta de México a los Estados Unidos por cualquier cosita. A pesar de mí avanzada edad, recuerdo todos estos detalles muy claramente, aunque no puedo recordar las fechas exactas."

"En algún momento a principios de la década de 1970, después de que mi madre se había reunido con sus hermanos que vivían en California, mi padre y yo nos fuimos a vivir con mis tíos en los Estados Unidos. Vivimos en California hasta la muerte de mi padre en octubre de 1975. Sin embargo, mi madre no se quedó en México mientras mi padre y yo vivíamos y trabajábamos en California. Comenzó a vivir con mis hermanos en un rancho cerca de Brownsville, Texas. Ella nunca volvió a vivir en México después de que mi padre y yo nos fuimos a California."

"Sinceramente creo que mi madre intentó entrar a los Estados Unidos como ciudadana antes de mi nacimiento, pero no se le permitió entrar al país porque un oficial de inmigración o oficial del gobierno de los Estados Unidos le dijo erróneamente a mi madre que no era ciudadana

**Declaración Jurada de Antonio Guerra Rodríguez**                                    3

<span style="color:red">Plaintiff's Exhibit "F"</span>

de los Estados Unidos por alguna razón. A lo largo de los años y después de tantos intentos, también creo que mi madre se dio por vencida al intentar probar su ciudadanía. No fue hasta después de la muerte de mi padre que finalmente convencí a mi madre de intentarlo de nuevo para que mis hermanos y yo pudiéramos entrar a los Estados Unidos."

"Si el gobierno de los Estados Unidos hubiera tomado en serio a mi madre y realmente hubiera considerado sus declaraciones y documentos con respecto a su reclamo de ciudadanía, realmente creo que mis hermanos y yo habríamos nacido en los Estados Unidos. Mi madre amaba este país. Su familia amaba este país. Mi abuelo, Teodoro Rodríguez, se registró para servir en la Primera Guerra Mundial. Mis tíos también se registraron y sirvieron en la Segunda Guerra Mundial. Recuerdo con cariño a mi madre contándonos historias de cómo no tenían un hogar real en Kansas, sino que vivían en vagones porque mi abuelo trabajaba para una compañía de ferrocarriles. Recientemente descubrí que mi abuela, Eleuteria Vargas, fue enterrada en Herington, Kansas."

"Incluso si no hubiera nacido en los Estados Unidos, sé que mis hijos habrían nacido en este país si el gobierno hubiera reconocido que mi madre era ciudadana estadounidense en 1957, cuando nos mudamos a Tamaulipas con el único propósito de que mi madre mostrara sus documentos de ciudadanía a un funcionario del gobierno de los Estados Unidos. Por lo menos, sé que mi madre habría presentado el papeleo apropiado para que sus hijos ingresaran legalmente a los Estados Unidos mucho antes de lo que lo hizo. Esto significa que habría estado físicamente presente en este país durante el período de tiempo requerido para el reclamo de ciudadanía de mi hijo, Jorge Guerra Vázquez."

**Declaración Jurada de Antonio Guerra Rodríguez**                                    4

Plaintiff's Exhibit "F"

"Juro que los hechos contenidos en la declaración anterior son verdaderos y correctos a lo mejor de mi conocimiento y creencia.

_Antonio Guerra, R_
ANTONIO GUERRA RODRIGUEZ

JURADO Y SUSCRITO ante mí en este __16__ día de __Agosto__, 2021.

CLAIRE NATALIE CADENA
Notary Public, State of Texas
Comm. Expires 10-30-2023
Notary ID 132232699

_Claire Cadena_
Notario Publico,
El Estado de Texas

Declaración Jurada de Antonio Guerra Rodriguez

5



Plaintiff's Exhibit "F"

# EXHIBIT B

Plaintiff's Exhibit "F"

STATE OF TEXAS        §
                             §

COUNTY OF DALLAS    §

### AFFIDAVIT OF JORGE GUERRA VAZQUEZ

BEFORE ME, the undersigned authority, on this day personally appeared JORGE GUERRA VAZQUEZ who, after being duly sworn by me, stated the following under oath:

"My name is Jorge Guerra Vazquez. My home address is, 1710 Wynn Terrace, Arlington, TX 76010, and my telephone number is (817)274-7623. I have personal knowledge of the facts contained herein, and I am competent to make this statement. I am providing this statement in support of my claim to U.S. citizenship."

"I was born on September 13, 1972, in Matamoros, Tamaulipas, Mexico to Antonio Guerra and Paula Vazquez. My father, Antonio Guerra, is the first-born of nine children to my U.S. Citizen grandmother, Cruz Vargas Rodriguez. I have tried multiple times to obtain my grandmother's marriage certificate to show they had been married before his birth, but due to the slow process of the civil registry in Mexico, it has been very difficult for me to obtain these documents with any ease. I have called three to five times a day trying to get in touch with the office in Romita, Guanajuato, where it is known that my grandparents married and lived together but the civil registry does not answer. I had a conversation with the Mexican consulate here in Dallas, TX and they told me the only thing I can do is keep trying to reach them because marriage certificates issued in Mexico must be requested in the respective office, the civil registry, in the state which it was issued."

"Nonetheless, I hired a family friend and attorney, Filiberto Molina Maldonado, to try to get in contact with the civil registry in Guanajuato in person. He let me know that due to COVID-19, the government offices have become increasingly busy and especially the civil registry due to



Plaintiff's Exhibit "F"

how many vital documents they are required to assess and produce during this deadly pandemic. Specifically, he has said they told him any documents that are not birth or death certificates have become last priority, as they are understaffed and working with very high volume of death certificate requests due to the deaths during the pandemic."

"Although my grandparents always told others that they were married, I have never seen their marriage certificate. I have also never seen any photographs showing that my grandparents married through the church. All my attempts to obtain my grandmother's marriage certificate are based on the assumption that my grandparents married before the state of Guanajuato before my father's birth but is not to say they were not, in fact, married. It is very common in Mexico for people to be considered married when they begin living together. For example, although my parents themselves did not marry under civil law until July 11, 1964, they had been living together since at least 1961."

"I have been trying ceaselessly every day to contact multiple civil registry offices in Guanajuato and have not been able to get in touch with one. Nonetheless, I have tried and continue to try to obtain those documents."

"I swear that the facts contained in the foregoing statement are true and correct to the best of my knowledge and belief."

_Jorge Guerra_
Jorge Guerra Vazquez

SWORN AND SUBSCRIBED before me this ___26th___ day of ___August___, 2021.

CLAIRE NATALIE CADENA
Notary Public, State of Texas
Comm. Expires 10-30-2023
Notary ID 132232699

_Claire Cadena_
Notary Public in and for
The State of Texas

⑫

**Plaintiff's Exhibit "F"**

## CERTIFICATE OF SIMULTANEOUS TRANSLATION

I, <u>Claire Natalie Cadena Garcia</u>, attest to my competence to translate from Spanish to English simultaneously, and I certify that this is a correct translation of the pertinent information from the Spanish language.

Executed on <u>August 26, 2021,</u> in Dallas, Texas.

_____
Signature

# EXHIBIT C

Plaintiff's Exhibit "F"



Plaintiff's Exhibit "F"

**JORGE ANTONIO GUERRA QUEZADA**
**A#098-102-097**

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a true and correct copy of the foregoing *Respondent's Motion To Terminate Or Dismiss Proceedings*, as well as any and all attachments thereto, was properly served via U.S. certified mail / email to James Rodden / hand-delivery on the Department of Homeland Security at the following address:

X_____    Office of Chief Counsel – Dallas
          Immigration and Customs Enforcement
          125 E. John Carpenter Fwy., Ste. 500
          Irving, Texas 75062

_____         Date: August 26, 2021.
John M. Bray

Plaintiff's Exhibit "F"