UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
1100 COMMERCE ST., SUITE 1060
DALLAS, TX  75242


The Law Office of John M. Bray PLLC
Bray, John Michael
1910 Pacific Ave., Ste. 8065
Dallas, TX  75201

In the matter of              File A 098-102-097      DATE: Sep 15, 2021
GUERRA QUEZADA, JORGE ANTONIO


__ Unable to forward - No address provided.
_X_ Attached is a copy of the decision of the Immigration Judge. This decision
    is final unless an appeal is filed with the Board of Immigration Appeals
    within 30 calendar days of the date of the mailing of this written decision.
    See the enclosed forms and instructions for properly preparing your appeal.
    Your notice of appeal, attached documents, and fee or fee waiver request
    must be mailed to:    Board of Immigration Appeals
                          Office of the Clerk
                          5107 Leesburg Pike, Suite 2000
                          Falls Church, VA 22041
__ Attached is a copy of the decision of the immigration judge as the result
    of your Failure to Appear at your scheduled deportation or removal hearing.
    This decision is final unless a Motion to Reopen is filed in accordance
    with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
    1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
    1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
    motion must be filed with this court:
                          IMMIGRATION COURT
                          1100 COMMERCE ST., SUITE 1060
                          DALLAS, TX  75242
__ Attached is a copy of the decision of the immigration judge relating to a
    Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
    1208.31(g)(1), no administrative appeal is available. However, you may file
    a petition for review within 30 days with the appropriate Circuit Court of
    Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.
__ Attached is a copy of the decision of the immigration judge relating to a
    Credible Fear Review. This is a final order. No appeal is available.
__ Other: _____


                                  ____L.GARZA_____
                                  COURT CLERK
                                  IMMIGRATION COURT                    FF

    cc: MURPHY, DANIEL
        125 E. HWY 114, STE 500
        IRVING, TX,  7527

Plaintiff's Exhibit "G"

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
DALLAS, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | <u>DETAINED</u> |
| | ) | |
| **GUERRA QUEZADA, Jorge Antonio** | ) | File No: A 098-102-097 |
| | ) | |
| Respondent | ) | In Removal Proceedings |

**CHARGE:** Section 237(a)(2)(E)(i) of the Immigration and Nationality Act ("Act"), as amended, in that any time after admission, you have been convicted of a crime of domestic violence, a crime of stalking or a crime of child abuse, child neglect, or child abandonment

**APPLICATIONS:** Cancellation of Removal for Certain Permanent Residents Under INA § 240A(a), Form EOIR-42A; Post-Conclusion Voluntary Departure

**ON BEHALF OF THE RESPONDENT:**
John M. Bray, Esq. and Yadira Juarez, Esq.
The Law Office of John M. Bray, PLLC
1910 Pacific Avenue, Suite 8065
Dallas, TX 75201

**ON BEHALF OF THE GOVERNMENT:**
Daniel Murphy
Assistant Chief Counsel
U.S. Department of Homeland Security
125 E. John Carpenter Fwy, Suite 500
Irving, TX 75062

## WRITTEN DECISION AND ORDERS OF THE IMMIGRATION JUDGE

### I. Procedural History

Respondent is a twenty-eight-year-old male, native and citizen of Mexico.[1] Respondent entered the United States on a non-immigrant B2 visa on December 4, 1997. Respondent was later admitted to the United States on February 23, 2005, as a lawful permanent resident ("LPR"), a child of LPR. Exh. 1, Form I-862; Exh. 2, Form I-213.

On January 12, 2021, Respondent was convicted in the 363rd Judicial District Court Dallas County, Texas, for the offense of Online Solicit Minor Sexual Conduct, in violation of Texas Penal Code § 33.021(c). Exh. 3, Order of Deferred Adjudication. The Department of Homeland Security ("Department") issued Respondent a Notice to Appear ("NTA"), charging him as removable under Section 237(a)(2)(E)(i) of the Act, and filed the NTA with the Court on June 15, 2021, initiating removal proceedings. Exh. 1.

---

[1] Respondent contends in his motion to terminate that he acquired U.S. citizenship through his father. The Court denied that motion. Exh. 13.

A 098-102-097

Plaintiff's Exhibit "G"

On July 1, 2021, Respondent, through Counsel, admitted the allegations in the Notice to Appear, but denied the charge of removability. The Court designated Mexico as the country of removal in the event removal became necessary. At a subsequent hearing on July 15, 2021, Respondent withdrew the prior denial and conceded removability under Section 237(a)(2)(E)(i) of the Act. Based on the admissions and concession, and there be no other issue of fact or law, the Court sustained removability by clear and convincing evidence. 8 C.F.R. § 1240.10(c).

On August 26, 2021, Respondent, through Counsel, filed a motion to terminate removal proceedings, claiming for the first time that Respondent was a U.S. Citizen. Exh. 7. The Department filed a response in opposition on August 31, 2021. Exh. 8. Respondent then filed a Memorandum of Law in support of their motion on September 2, 2021. Exh. 9. The Court held a hearing on the motion on September 2, 2021.[2] Upon due consideration of the evidence presented and the arguments of counsel, the Court denied the motion to terminate proceedings, finding that Respondent did not meet his burden of proof to overcome the presumption of alienage in light of his birth in Mexico. The Court subsequently issued a written decision. Exh. 13. In light of the Court's ruling on the motion to terminate, the Court affirms the prior finding that removability has been established by clear and convincing evidence.

On August 2, 2021, Respondent filed an application for cancellation of removal for certain lawful permanent residents under INA § 240A(a). Exh. 4. A merits hearing on the application was held on September 2, 2021, and continued on September 9, 2021. The Respondent swore to the truth of his application. Exh. 12. The Department confirmed background and security checks were complete and current. Respondent, through Counsel, requested Post-Conclusion Voluntary Departure as alternative relief.

## II.     Evidentiary Record

The Court marked the following documents in the evidentiary record:

Exh. 1:      Form I-862, Notice to Appear, filed June 15, 2021;

Exh. 2:      Form I-213, Record of Deportable/Inadmissible Alien, 4 pgs, filed June 15, 2021;

Exh. 3:      Criminal conviction records for Respondent, including order of deferred adjudication and conditions of community supervision, 9 pgs, filed June 15, 2021;

Exh. 4:      Form EOIR-42A, Application for Cancellation of Removal for Certain Permanent Residents (7 pgs) with attached Exhibits A-N (159 pgs), filed August 2, 2021;

Exh. 5:      42A Supporting Evidence, Exhibits A-D, 46 pgs, filed on August 19, 2021;

Exh. 6:      Motion to Present Expert Testimony from Mr. Jeffrey Fletcher via WebEx or Telephone, with curriculum vitae attached, filed August 25, 2021;

---

[2] Respondent filed an additional piece of evidence immediately prior to the hearing, consisting of a citizenship chart. Exh. 14.

A 098-102-097

EOIR - 3 of 19

Plaintiff's Exhibit "G"

Exh. 7:      Respondent's Motion to Terminate Proceedings (8 pgs) with attached Exhibits A-C (14 pgs), filed August 26, 2021;

Exh. 8:      Government's Response in Opposition to Respondent's Motion to Terminate Proceedings, 3 pgs, filed August 31, 2021;

Exh. 9:      Respondent's Memorandum of Law in Support of Respondent's Motion to Terminate Proceedings, 9 pgs, filed September 2, 2021;

Exh. 10:     Form I-797C, Receipt of N-600 Application for Certificate of Citizenship for Jorge Guerra Vazquez (Respondent's father), 1 pg, filed September 2, 2021;

Exh. 11:     DHS Prehearing Brief on Removability with attached Exhibits A-D, 33 pgs, filed July 12, 2021;

Exh. 12:     42A Application Signature Page 7, 1 pg, dated September 2, 2021;

Exh. 13:     Court's Written Decision on Respondent's Motion to Terminate Proceedings, 8 pgs, issued September 9, 2021; and,

Exh. 14:     Out-of-Wedlock Birth Abroad to U.S. Citizen Mother chart, in support of Respondent's Motion to Terminate Proceedings, 1 pg, filed September 2, 2021.

Neither party objected to the admission of the above documentation. Thus, all evidence was admitted into the evidentiary record. The Court considered all admitted evidence and familiarized itself with the record of proceedings in its totality, even if not specifically addressed in this decision. 8 C.F.R. § 1240.1(b).

## III.    Summary of Testimony

Respondent and four witnesses testified in support of Respondent's applications for relief. Additionally, the Department stipulated to portions of a proffer for another witness, and the Court accepted that stipulation.

### A.  Jeffrey Fletcher

Mr. Fletcher is a Licensed Professional Counselor and Licensed Sex Offender Treatment provider. He was recognized by the Court, without objection, as an expert on "risk of recidivism for sex offenders" and "criminal sex offenses."[3] Mr. Fletcher has interviewed thousands of sex offenders and has treated hundreds. He has been recognized as an expert witness in court, usually during the sentencing portion of a criminal trial testifying on behalf of the offender. He has testified

---

[3] See Exh. 6 for Mr. Fletcher's curriculum vitae detailing his educational background, licensing, and experience as a treatment provider for sex offenders.

A 098-102-097

Plaintiff's Exhibit "G"

EOIR – 4 of 19

over 100 times. Mr. Fletcher holds contracts with the State of Texas and the Federal Government to provide sex offender treatment at various locations.

Mr. Fletcher treated Respondent for over two years, which included an initial assessment and over 100 group therapy sessions. He believes Respondent is genuinely contrite and remorseful for his actions. Respondent did not minimize his behavior and he "owned" his offense earlier than most. Respondent attended group therapy faithfully and made treatment progress. He was made accountable to the group and held others accountable. Mr. Fletcher explained that Respondent had to give an accounting of his offense to the group, after which the police report was read aloud so the members could compare the two statements. Mr. Fletcher opined that Respondent is a good candidate for treatment and probation. He testified that sex offender probation is aggressive, and Respondent would be subject to future polygraphs and other assessments. There are also other tools and treatment that could be made available to Respondent if he remains in the United States. Mr. Fletcher was unaware of sex offender treatment options in Mexico.

Mr. Fletcher testified regarding his initial assessments of Respondent consistent with the report dated February 20, 2019, found in Exhibit 4, Tab H. He testified that Respondent scored a 3.6% on the Static-2002 assessment, indicating a low to moderate risk of recidivism over a ten-year period (Respondent is in a group of individuals where 96.4% do commit a new sex offense over a 10 year period). Respondent scored a 2 on the assessment that predicts compliance with probation conditions, indicating a low risk for violating probation (Respondent is in a group of 88% that will complete probation successfully). Finally, he scored a 2 on the PCLR assessment; a score of 30 or higher is required to be found psychopathic. Prior to starting probation, Respondent also passed a polygraph with no deception indicated.

On cross-examination and upon questions from the Court, Mr. Fletcher provided the additional following testimony: He acknowledged that the initial assessments were conducted only one time, prior to the start of treatment, and are predictive, not definitive. Regarding the Statis-2002, there are five main categories to the assessment: age of offender, persistence of sexual offending (been convicted and re-offends), deviant sexual interest (non-contact offenses score higher because they are more likely connected to mental health and impulsivity), relationship to victim, and general criminality. There are no subjective components to the test. These assessments are a snapshot in time with a predictive range of 10 years. Mr. Fletcher was hired by Respondent's defense attorney to conduct these assessments in preparation for his criminal case. The polygraph was court ordered and administered prior to the start of probation.

When asked by the Court to relay the details of Respondent's criminal offense as he understood them, Mr. Fletcher testified as follows: The case involved a 14 year old female whom Respondent met on Snapchat. Respondent lied to her about his age. The victim sent Respondent five photographs of her breasts and vagina, and a few videos. Respondent offered the victim money and alcohol in exchange for sex.

**B. Jorge Guerra Vazquez, Sr., Respondent's Father**

Mr. Guerra was born in Matamoras, Mexico. He currently lives in Arlington, Texas, with his son, Jesus. Mr. Guerra is a Lawful Permanent Resident. Mr. Guerra has three children;

A 098-102-097

EOIR – 5 of 19

Plaintiff's Exhibit "G"

Respondent is one of his sons. Respondent lived with Mr. Guerra until he left for college. Respondent speaks Spanish fluently. Respondent attended Texas Christian University (TCU) and studied to be a teacher. They have many family members who currently live in the United States with lawful status, including Mr. Guerra's parents, and aunts, uncles, and cousins from both sides of the family. He does not have any family currently living in Mexico.

Mr. Guerra's mother, Respondent's grandmother, has a heart problem that will require surgery in the near future. She is expected to get better after surgery, but she will need assistance. Respondent is close to his paternal grandparents. He helps them with their personal affairs, including documents such as Social Security, because he is fluent in English and because they trust Respondent more than any other grandchild. Respondent helps them with their doctor appointments. Since Respondent has been detained, a niece has been helping the grandparents. Respondent's grandmother is worried about Respondent's situation, not her own medical issues.

Mr. Guerra is aware that Respondent's criminal case is the reason he is in immigration proceedings. Mr. Guerra is not aware of the details of the crime. He does not know why Respondent committed this offense; he does not know if Respondent was going through something at the time. But he believes Respondent is a good person. Respondent never caused problems when growing up and was dedicated to his studies. Respondent helped the family and would volunteer. He never caught Respondent in a lie. Respondent loves his siblings and other family members; they are close. Respondent was close to his maternal grandparents before they passed away. Mr. Guerra divorced Respondent's mother three or four years ago. He does not have any problems with his ex-wife. He is now aware if the divorce caused problems for Respondent.

If removed from the United States, Mr. Guerra believes his son will not be able to live well because conditions are poor in Mexico, including violence and crime. He does not know if Respondent would be able to teach in Mexico. Also, the family will suffer financially if Respondent is removed because they will have to support Respondent. Mr. Guerra will do anything to help his son. He believes Respondent should be allowed to remain in the United States because he has given a lot to this country, and can still do a lot of good in the future.

Upon questions from the Court, Mr. Guerra testified that he was not aware of the age of the victim, he was not aware of an exchange of photographs, and he was not aware that Respondent offered the victim money and alcohol in exchange for sex. This information does not affect his opinion of his son.

## C. Respondent

Respondent was born in Matamoras, Mexico, and lived there until he was nine years old. He is currently 28 years old. He is not married and has no children. He is a Lawful Permanent Resident. Prior to his detention by ICE on June 10, 2021, he lived in Dallas with his grandmother's brother. He started probation on January 20, 2021.

When Respondent was seven or eight years old, an older second cousin would expose himself to Respondent and ask Respondent to touch him. The cousin was 18 or 19 years old. This happened between five and 10 times. This abuse distorted Respondent's view on sexuality, sexual

A 098-102-097

EOIR – 6 of 19

Plaintiff's Exhibit "G"

abuse, and sexual identity. It made Respondent feel powerless. His therapist and mother know about the abuse. Respondent believes this was an indirect cause of his actions that led to his crime.

Respondent's highest level of education is a Bachelor's Degree in Education from TCU. He had a full-ride scholarship to TCU and graduated with a 3.1 GPA. Respondent has always enjoyed school. He was in the top 1% of his graduating class in High School. Respondent was a member of various societies in college including a service fraternity. Respondent dedicated about 90 hours per semester to community service.

Respondent has worked since he was 16 years old, starting out at the Texas Ranger's ballpark. While in college, he served as a college advisor to high school students and continued to work at the ballpark in the summer. He also worked at a fast food restaurant. He was a high school teacher for 3 ½ years and taught U.S. History; his students performed well on the annual state exam. After losing his teaching job, and before his detention by ICE, Respondent worked at Home Depot. He started working there in February 2020, and he has worked in their distribution center since February 2021. He would like to stay with Home Depot and eventually be in charge of a distribution center.

Respondent is very close to his family members, including his parents, siblings, and paternal grandparents. His family has stood by him throughout his struggles stemming from his criminal case and immigration process. Respondent believes he is his grandparents' favorite grandchild; they rely on him to help with their personal affairs, including taxes, social security, and medical records.

Respondent's parents divorced in 2016 when he was 22 years old. Infidelity was the cause. Respondent's parents argued frequently over time leading up to the divorce. Respondent's therapist advised that his parents modeled a toxic relationship, causing Respondent to model the same in his own relationships.

Respondent's current immigration problems stem from his crime of online solicitation of a minor. This occurred over Snapchat. Snapchat is a platform where individuals can send messages and they go away after a short period of time. People can be added to one's Snapchat account based on geographic location. Respondent added the victim based on her geographic location in relation to him, which was the Dallas area. Respondent did not know her; she was not a student at the school where he taught. Respondent knew she was 14 years old soon after they started communicating, but he continued their conversation anyway. They communicated about one week. Respondent asked her for sex in exchange for money and alcohol. He persuaded her to meet up with him for sex. He was arrested on his way to meet her. Respondent pled guilty to this crime. Respondent has no other criminal history.

Respondent is currently on sex offender probation, which has a lot of conditions attached to it. Respondent has complied with all conditions to date. Respondent even changed his job at Home Depot from retail to the distribution center at the request of his probation officer. Respondent never missed an appointment with his probation officer until he was detained by ICE.

A 098-102-097

Plaintiff's Exhibit "G"

EOIR – 7 of 19

Respondent was a high school teacher at the time of his arrest for this crime. As a result, he was placed on administrative leave while the school conducted their own investigation. The school determined that Respondent never victimized any of his students, but he was still terminated about a month after his arrest.

Following his arrest, Respondent suffered from depression. He had thoughts of ending his life but never attempted it. He stopped taking care of himself and ended up in the hospital for four days with ketoacidosis. Therapy helps with his depression.

Prior to college, Respondent attended church multiple times a week. He dropped off in college with the excuse that he did not have time for it. Respondent used to attend Pastor Mendoza's church in Arlington. His is the family pastor and Respondent has known him since he was 14 years old. He helped Respondent's parents when they were having trouble in their marriage. He was there for Respondent following his arrest. Pastor Rios is Respondent's other pastor at a church in Dallas. Respondent is a Christian and belongs to a non-denomination church. Respondent has participated in community events as part of these churches, including food drives, proselytizing, and holiday events.

Respondent is ashamed of the crime he committed. He recognizes the damage he caused the victim, her family, and his own family. At first he was afraid to turn to God, but now knows that God has forgiven him. Respondent is working on forgiving himself. Respondent has grown a lot since his arrest. He hit rock bottom and is now rebuilding. He believes he has good moral character and will not be a danger to society in the future. He will not re-offend. He is not the same person and he has an accountability system in place.

If Respondent is removed to Mexico, he does not know where he would go or what he would do. He has no family there. He would have to live in Matamoras. Respondent believes his family would be negatively impacted because they will suffer emotionally and financially if he is removed. His mother fears that she or her other son will be the victims of violence if they visit Respondent in Mexico. Respondent does not know what he would do for a living in Mexico and he does not know the consequences of being a sex offender. Although he speaks fluent Spanish, others in Mexico will hear his American accent; he will be labeled as a "deportee."

On cross examination, Respondent gave the following testimony: He modeled his parents' toxic relationship in his own relationships in the form of jealousy and lack of trust. He graduated from high school in 2011 and graduated from college in 2015. He immediately began teaching in the Fort Worth Independent School District at Carter Riverside High School. He mostly taught 11th grade, which are students between the ages of 15 and 17 years old. He enjoyed teaching history because it is like story telling. He met his victim over Snapchat. In order to save Snapchat messages, one would have to take the extra step of saving the message to one's phone. He added the victim to his account based on her geographic location, which was within 20 miles of his own. He knew early on she was only 14 years old. Respondent did not ask where she went to school. Respondent added other girls to his Snapchat account around the same time he added victim. He communicated with a few of them, but only exchanged pictures with the victim. Respondent told her he was 19 years old. Respondent offered her money and alcohol in exchange for sex. Respondent does not recall if she asked for a particular type of alcohol or if he chose; he also does

A 098-102-097

Plaintiff's Exhibit "G"

not recall the type of alcohol he brought with him, whether it was beer or liquor. Respondent had to register as a sex offender within days of his plea deal. Respondent attended church up to the time of his plea agreement, and then had to stop going because he is prohibited from attending. He listens to church on the radio and still communicates with Pastors Mendoza and Rios. Respondent believes he has a moral responsibility to his students to set a good example, and that he failed to do so when he committed his crime. Prior to his arrest, Respondent smoked marijuana infrequently. He would get it from "people he knew" and would usually smoke in his car by himself. It was his way to deal with problems in his life that he had not yet addressed. Respondent has not smoke marijuana or consumed alcohol since his arrest in 2019. Respondent has an open and honest relationship with his family, but he does not know if he explained the details of his crime to his father. His mother knows everything.

*Respondent was asked what photographs he had of the victim on his phone at the time of his arrest, and Respondent refused to answer, invoking his 5th Amendment right to not incriminate himself. He was asked what photographs he sent of himself to the victim, and he again refused to answer under the 5th Amendment. Respondent's Counsel stated that Respondent would not answer any questions regarding photographs between him and the victim, so no further questions on this topic were permitted by the Court, but the parties were informed that the Court would consider his refusal in deciding the case.

In response to questions from the Court, Respondent gave the following testimony: He would have to live in Matamoras, Mexico, to be close to his family in Brownsville, Texas. He has not looked into the consequences of being a sex offender in Mexico, but he knows for sure that he would not be allowed to teach minors anywhere. He does not know why he did not mention his sexual abuse in the personal statement he provided to the Court, but he knew he would have the opportunity to talk about it during his hearing. With regard to his Snapchat conversations with the victim, Respondent is the one who started the conversation and he initiated the sexual aspects of the conversation. Respondent recalled that the victim needed money, and he offered to give it to her in exchange for sex. He cannot recall how much he was going to give her. Respondent was asked to provide a ballpark amount as best he could, and estimated it was around $200. He had the money with him when he went to meet her. He was pulled over by law enforcement in her neighborhood and arrested. Respondent believes the victim has suffered trauma as a result of his actions, including distrust, depression, family problems, and a distorted view of sexuality.

### D. Isidro Cruz, Respondent's friend

Mr. Cruz is a United States Citizen and is currently employed by Citigroup as a data entry clerk. He has known Respondent since the 8th grade and considers him one of his best friends. He described Respondent as being "real," that he is a hard worker, and is always trying to do his best. He described Respondent as a leader; as someone who learns a job then takes on a leadership role. In addition to being best friends, he worked alongside Respondent in high school at Ranger Stadium. He is aware of Respondent's criminal conviction for online solicitation of a minor but does not know the specific details. Mr. Cruz has spent time with Respondent since his arrest and has spoken with Respondent about his crime. He believes Respondent is trying to stay on the right path and to stop beating himself up over what he did. He believes Respondent is remorseful. Mr. Cruz testified that Respondent's criminal actions have no bearing on his view of

A 098-102-097

EOIR – 9 of 19

Plaintiff's Exhibit "G"

Respondent's character. Mr. Cruz testified that he and Respondent's family will be "gutted" if Respondent is removed to Mexico because they will not be able to see him regularly and because Respondent is an important part of their life. Mr. Cruz has been keeping Respondent's employer updated on the status of Respondent's case and testified that Home Depot is ready to re-employ Respondent when he is released from custody. Mr. Cruz does not believe it is fair to judge a person off of one crime, and he believes Respondent has learned his lesson. He testified that he knows Respondent's heart, and that he is going to therapy and needs his support system. Mr. Cruz believes that Respondent is making the most out of his situation and will not take it for granted. He believes Respondent will continue to make a positive contribution to society if allowed to stay in the United States. On cross-examination, Mr. Cruz stated he was not aware that pictures were exchanged between Respondent and his victim, and he was not aware that Respondent offered money and alcohol to the victim in exchange for sex. However, he also testified that these details do not impact his view of Respondent's character.

### E. Kelly Thomas, Respondent's friend

Mr. Thomas is a United States Citizen and is employed full-time with the Army Reserves as a maintenance technician. He has known Respondent since the 8th grade and considers him one of his best friends. He thinks of Respondent as a brother, as family. Mr. Thomas described Respondent as loving and caring; he was always happy spending time with Respondent. He believes Respondent has good moral character based on past interactions and from having known Respondent for so long. He is generally aware of the crime for which Respondent was convicted, but does not know the details. Sometime after Mr. Thomas returned from a deployment in 2020, he met up with Respondent in person to discuss what happened. Respondent told him about his crime and said he was ashamed of what he did. He believes Respondent has learned from his actions and has become a better person. He believes Respondent was in a depressed state. Despite his conduct, Mr. Thomas testified that Respondent will always be his friend and like a brother. Respondent's conviction does not impact Mr. Thomas' view of Respondent's character. If Respondent is removed to Mexico, Mr. Thomas believes he and Respondent's family and friends will suffer from having lost someone important in their life.

### F. Pastor Juan Mendoza[4]

Respondent proffered the following testimony for Pastor Mendoza: Respondent has a deep-seeded faith and was an active member of the family church while growing up; Respondent was raised with religious values; Pastor Mendoza has worked one-on-one with Respondent; Pastor Mendoza believes Respondent has good moral character generally, and still holds to this opinion despite his criminal conviction; and Pastor Mendoza is aware of the type of conviction but does not know the details. The Department stipulated to all aspects of the testimony except testimony

---

[4] Because the Department was not willing to stipulate to the entirety of the proffered testimony, the Court attempted to call Pastor Mendoza to provide telephonic testimony at the request of Respondent's Counsel. However, Pastor Mendoza did not answer the telephone. Respondent's Counsel stated on the record that she did not believe Pastor Mendoza was available to testify.

A 098-102-097

Plaintiff's Exhibit "G"

regarding Respondent's good moral character in light of the fact that Pastor Mendoza is not aware of the details of the crime. The Court accepted the stipulated testimony.

### IV.    Credibility

All applications for relief made on or after May 11, 2005 are subject to the credibility assessment standards articulated in the REAL ID Act. *Matter of S-B-*, 24 I&N Dec. 42, 45 (BIA 2006); *see also Matter of Almanza-Arenas*, 24 I&N Dec. 771, 774 (BIA 2009) (finding that the provisions of the REAL ID Act applied to respondent's application for cancellation for removal).

An applicant's own testimony is sufficient to meet his burden of proving his claim if it is believable, consistent, and sufficiently detailed to provide a plausible and coherent account. *See Matter of Dass*, 20 I&N Dec. 120, 124 (BIA 1989); 8 C.F.R. § 1208.13(a). While minor and isolated discrepancies in the applicant's testimony are not necessarily fatal to credibility, omission of key events coupled with numerous inconsistencies may lead to a finding that the applicant is not credible. *See Matter of A-S-*, 21 I&N Dec. 1106, 1109-1110 (BIA 1998). Testimony is not considered credible when it is inconsistent, contradictory with current country conditions, or inherently improbable. *See Matter of S-M-J-*, 21 I&N Dec. 722, 729 (BIA 1997). An adverse credibility finding must be supported by "specific and cogent" reasons that have a legitimate nexus to the finding in the case. *A-S-*, 21 I&N Dec. at 1109.

The following factors may be considered in the assessment of an applicant's credibility: demeanor, candor, responsiveness, inherent plausibility of the claim, the consistency between oral and written statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of such statements, the consistency of such statements with evidence of record (including the reports of the Department of State on country conditions), and any inaccuracy or falsehood in such statements, whether or not such inaccuracy or falsehood goes to the heart of the applicant's claim. INA § 208(b)(1)(B)(iii); *Matter of J-Y-C-*, 24 I&N Dec. 260 (2007); *see also S-B-*, 24 I&N Dec. at 42. The Board has made clear that an applicant cannot meet his burden of proof by "general and vague" testimony, and "the weaker an alien's testimony, the greater the need for corroborative evidence." *Matter of Y-B-*, 21 I&N Dec. 1136, 1139 (BIA 1998). If the Court determines that the applicant's testimony alone is insufficient to carry his burden of proof, the Court may demand that the applicant provide corroborative evidence that is reasonably obtainable. *See* INA § 240(c)(4)(B).

After considering the totality of the circumstances and all relevant factors, the Court finds that the four witnesses provided generally credible testimony. However, the Court notes that Respondent's father, Mr. Cruz, and Mr. Thomas all testified on direct examination that Respondent has good character and has been rehabilitated from his crime, but none of them knew the details of his crime. When provided some of those details, all three witnesses testified that their opinions remained unchanged. Mr. Fletcher also testified credibly as an expert witness, however, the Court has concerns with some of his opinions and conclusions, which will be explained in further detail below on the issue of discretion. Finally, the Court accepts the stipulated testimony of Pastor Mendoza as credible.

A 098-102-097

EOIR – 11 of 19

Plaintiff's Exhibit "G"

With regard to Respondent, the Court finds that he testified credibly as to the following: personal background, educational background, community involvement, work history, religious upbringing and practices, and relationships with his family. These areas of Respondent's testimony are supported by independent evidence, including documents and other witness testimony. Thus, the Court will give these areas of testimony the appropriate weight. However, Respondent's testimony regarding his criminal offense was vague and evasive at times, and caused the Court to question his level of remorse and rehabilitation. *See Wang v. Holder*, 569 F.3d 531, 540 (5th Cir. 2009) ("[T]he IJ was not required to accept Wang's testimony as true in the face of inconsistencies and verbal and nonverbal cues of deception.").

Out the outset, the Court notes that neither party provided a police report or complaint filed by the victim in this case. In block 49 of the 42A application, Respondent listed his criminal conviction, but failed to provide any documentation even though the instructions state the following: "You are required to submit documentation of any such occurrences." The only documentary evidence before the Court regarding Respondent's crime was filed by the Department, and includes the statutory provision under which Respondent was convicted, Order of Deferred Adjudication, Plea Agreement, and Judicial Confession. Exhs. 3 and 11. Respondent submitted a statement to the Court wherein he made a general reference to his criminal offense and expressed his remorse. Exh. 4, Tab D. Additional details of the crime were provided through the testimony of Mr. Jeffrey Fletcher, who provided sex offender treatment to Respondent, and Respondent himself. The Court's concerns regarding Respondent's explanation of his crime, his expressions of remorse, and his rehabilitation will be discussed below as it pertains to discretion.

### V.    Legal Standard on LPR Cancellation of Removal Under INA § 240A(a)

Section 240A(a) of the Act provides that the Attorney General may cancel the removal of an alien who is inadmissible or deportable from the United States if the alien can demonstrate that he has: (1) been an alien lawfully admitted for permanent residence for not less than five years; (2) has resided in the United States continuously for seven years after having been admitted in any status; and (3) has not been convicted of an aggravated felony. *See* INA § 240A(a); *see also Matter of C-V-T-*, 22 I&N Dec. 7 (BIA 1998). Regarding the second element, continuous residence begins upon lawful admission and is deemed to end upon service of the NTA under section 239(a) of the Act or upon the commission of an offense which "renders the [applicant] . . . removable . . . under section [212(a)(2),] 237(a)(2)[,] or 237(a)(4)," whichever is earlier.  INA § 240A(a)(2), (d)(1); *see also Matter of Camarillo*, 25 I&N Dec. 644, 652 (BIA 2011); *Matter of Perez*, 22 I&N Dec. 689, 694–95, 700 (BIA 1999).

If these three statutory eligibility criteria are established, an applicant for cancellation of removal must establish that he warrants relief as a matter of discretion. INA § 240A(a) and § 240(c)(4)(A)(ii). The Board of Immigration Appeals ("Board") has held that the general standards developed for the exercise of discretion under former INA § 212(c) are also applicable to the exercise of discretion under INA § 240A(a). *C-V-T-,* 22 I & N Dec. at 10; *see also Matter of Sotelo-Sotelo*, 23 I & N Dec. 201, 202 (BIA 2001).

In keeping with the standards developed under former section 212(c) of the Act, the Court should consider the record as a whole and "balance the adverse factors evidencing the alien's

A 098-102-097

Plaintiff's Exhibit "G"

undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether a grant of relief would be in the best interest of this country." *C-V-T*, 22 I&N Dec. at 11; *Matter of Edwards*, 20 I & N Dec. 191, 195 (BIA 1990).

There is no threshold requirement that the applicant show unusual or outstanding equities. Rather the Court must weigh the favorable and adverse factors to balance the "totality of the evidence" before reaching a conclusion as to whether the applicant warrants a grant of cancellation of removal in the exercise of discretion. *Sotelo-Sotelo*, 23 I&N Dec. at 204; *Edwards*, 20 I&N Dec. at 196. The Court considers adverse factors including the nature and underlying circumstances of the removal ground at issue and any other evidence that could be indicative of an alien's bad character or undesirability as a permanent resident of the United States. *Sotelo-Sotelo*, 23 I&N Dec. at 203; *Marin*, 16 I&N at 584.

Where serious misconduct is evident, the alien must present additional favorable evidence to counterbalance the adverse factors. *Sotelo-Sotelo*, 23 I&N Dec. at 203; *see also Marin*, 16 I&N Dec. at 585. An alien who has a criminal record is ordinarily required to establish rehabilitation before relief will be granted as a matter of discretion. *C-V-T-*, 22 I&N Dec. at 12. However, rehabilitation is but one factor considered and is not an absolute prerequisite in every case involving an alien with a criminal record. *See Edwards*, 20 I&N Dec. at 195–196; *Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988). Positive factors include family ties in the United States, residence of long duration in the United States, evidence of hardship to the applicant and his family if removal occurs, a history of employment, existence of property or business ties, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to the alien's good moral character. *C-V-T-*, 22 I&N Dec. at 11.

## VI.     Findings and Analysis

### A. 5 Years as Lawful Permanent Resident, 7 Years Continuous Residence, and Disqualifying Offenses

The Department conceded, and the Court agrees, that Respondent meets the first three statutory requirements for cancellation of removal. Respondent entered the United States on a non-immigrant B2 visa on December 4, 1997. He was later admitted to the United States on or about February 23, 2005, as a lawful permanent resident. His conviction on January 12, 2021, did not impact the admission and residency requirements. Finally, Respondent does not have a disqualifying aggravated felony conviction. Thus, the sole issue before the Court is whether Respondent merits a favorable exercise of discretion.

### B.  Discretion

After weighing the favorable and adverse factors in this case, the Court denies Respondent's application for cancellation of removal as a matter of discretion, finding that the gravity of his conviction outweighs the positive equities.

First, Respondent was charged with a serious offense under Texas Penal Code 33.021(C), a second degree felony, which states that, "[a] person commits an offense if the

Page **12** of **17**

A 098-102-097

Plaintiff's Exhibit "G"

person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person." Exh. 11, Tab B. On January 12, 2021, Respondent pled guilty to the charged offense pursuant to a plea bargain, which noted that the sentence range was 2-21 years confinement and an optional fine not to exceed $10K. *Id*. at Tab C. He was sentenced to eight years deferred adjudication, paid court costs, and was notified of the requirement to register as a sex offender. *Id*. The plea bargain paperwork also provided notice to Respondent that if he was not a United States Citizen, his guilty plea may, and "is almost certain to", result in his deportation or removal, exclusion from admission to the United States, or denial of naturalization. *Id*.

Second, the underlying details of this crime are egregious and predatory. Respondent communicated with a 14 year old female over Snapchat for one to two weeks. He knew early on in their communications that she was only 14, but he continued the conversation anyway. He lied to her about his own age, saying he was 19 years old. He initiated the sexual conversations and persuaded her to meet him for sex. He offered money and alcohol in exchange for sex, and had money and alcohol with him at the time of his arrest. He proposed to pick her up from her home for the purpose of having sex. According to testimony from Mr. Fletcher, who was well-versed in the details of Respondent's crime, Respondent exchanged photographs and videos with the victim, including photographs of her breasts and vagina. In response to a question on cross-examination about other girls he communicated with on Snapchat, Respondent testified that he only exchanged with pictures with the victim. Respondent was on his way to meet the victim for sex when he was arrested in her neighborhood. At the time of his arrest on February 1, 2019, Respondent was a high school history teacher, interacting daily with girls of a similar age. He was immediately placed on administrative leave and was terminated about a month later.

Next, the Court is not convinced that Respondent has accepted full responsibility for his actions. While Respondent, his father, and two of his friends testified that he is remorseful, that he is a changed person, and that he is not likely to re-offend, other evidence in the record suggests otherwise.

The Court gave careful consideration to the testimony of Mr. Fletcher, an expert witness who conducted assessments of Respondent just 19 days after his arrest, and provided sex offender therapy and treatment to him for two years. Respondent relied heavily on Mr. Fletcher's assessments as providing independent evidence that he is a low risk for reoffending. Respondent also relied heavily on Mr. Fletcher's testimony as providing independent evidence of Respondent's genuine remorse and rehabilitation.

On February 20, 2019, Mr. Fletcher conducted three initial assessments of Respondent and produced a written report. Exh. 4, Tab H. He assessed Respondent's rate of recidivism as 3.6% over a 10 year period, indicating a low or moderate risk for future sexual misconduct. He also assessed Respondent as a low risk for violating probation conditions. Finally, he assessed R as low risk for psychopathy. During his testimony, Mr. Fletcher acknowledged that these assessments are predictive, not definitive. In the summary section of the report, it states:

A 098-102-097

Plaintiff's Exhibit "G"

EOIR – 14 of 19

Conclusions drawn and recommendations made in this report are based on the information that was provided during my interviews with Mr. Guerra-Quezada, collateral information, and the results of the assessment instruments that were utilized. Additional information about this client or about his alleged criminal activity could alter my opinions…

These assessments were never conducted again. However, there is evidence before the Court that Mr. Fletcher did not have relevant and important information at the time of these assessments, which now casts doubt on their reliability. Specifically, Respondent testified for the first time in Court that, while living in Mexico around the age of seven or eight, he was the victim of sexual abuse by an adult cousin who exposed himself to Respondent between five and 10 times, and asked Respondent to touch him. This information was not included in Respondent's personal statement submitted as evidence to this Court. Exh. 4, Tab D. Additionally, this testimony contradicts the information Respondent provided to Mr. Fletcher during the initial assessment, which notes with regard to Respondent's sexual history that his "first sexual experience was at the age of 16 with his 16 year old girlfriend." Exh. 4, Tab H. Respondent testified that he revealed his abuse to Mr. Fletcher for the first time several months into his treatment. The Court notes that Mr. Fletcher never mentioned this information during his direct testimony on September 2, 2021. He was not asked about the impact of Respondent's prior sexual abuse on his opinions and recommendations because the Court had no knowledge of it until Respondent testified on September 9, 2021. Given that Respondent's abuse as a child was not known to Mr. Fletcher at the time of his initial assessments, and given the obvious significant impact it could have on the findings, the Court gives the results of those assessments little weight.

Mr. Fletcher also testified that Respondent participated in over 100 group therapy sessions, and in Mr. Fletcher's opinion, Respondent was contrite and remorseful for his conduct, making him a good candidate for treatment and probation. He stated that Respondent did not minimize his behavior when discussing his crime during group therapy, and that he "owned" his offense earlier than most. However, during his testimony before this Court, Respondent was vague, and at times evasive, in response to questions about the details of his crime. On direct examination, Respondent testified that he added the victim to his Snapchat account based on her geographic location in Dallas, and that he continued to communicate with her for about one week even after finding out she was only 14 years old. He testified that he did not know her and never met her in person. He testified that he offered her money and alcohol in exchange for sex, had persuaded her to meet up with him, and was arrested on his way to meet her. He provided no details regarding the specifics of their communications. On cross examination, he admitted to adding several females to his Snapchat account based on geographic location and communicating with some of them, but he could not recall how many. He admitted that in order to preserve communications through Snapchat, he would have to take the extra step of saving them to his phone. When asked about the pictures of victim that were found on his phone by the police, Respondent invoked his Constitutional right not to incriminate himself. When asked about photographs he sent to the victim, Respondent again refused to answer. He admitted telling the victim he was only 19 years old. When asked about the type of alcohol he brought with him to give to the victim in exchange for sex, he stated he could not recall. When asked by the Court to describe the nature of their communications, he admitted they were sexual and that he initiated the sexual conversations. When asked how much money he intended to give the victim, he first

A 098-102-097

EOIR – 15 of 19

Plaintiff's Exhibit "G"

stated he could not recall, but then estimated it was around $200, and that he had the cash with him at the time of his arrest.

When an applicant for discretionary relief refuses to answer pertinent questions on the ground that his answers may incriminate him, he is in effect limiting the Attorney General's inquiry on discretionary matters. *Matter of Y-*, 7 I&N Dec. 697 (BIA 1958). It is the applicant's burden to establish his eligibility for discretionary relief, and where he limits the area of inquiry by claiming privilege it cannot be found that he has met this burden. *Id*. An applicant seeking an exercise of favorable discretion cannot limit the inquiry to the favorable aspects of the case and reserve the right to be silent on the unfavorable aspects. *Id. See also Matter of M-*, 5 I. & N. Dec. 261 (BIA 1953).

In this case, the Court weighs heavily against the Respondent his refusal to answer pertinent questions about the crime to which he pled guilty. Respondent clearly attempted to limit the scope of inquiry into his conduct by first providing a generic description of his crime on direct examination. When prodded for more details, he provided some additional information, refused to provide other information, and denied recollection of yet more details. This is in conflict with someone who has "owned" his crime and accepted full responsibility for his actions. While Respondent has the right to not incriminate himself in immigration proceedings, his refusal to acknowledge what is likely the most egregious aspect of his case—that being the possession of illicit photographs of a minor—calls into question his true repentance and rehabilitation potential, which directly impacts whether he merits favorable discretion from this Court. Additionally, according to Mr. Fletcher, the police report (which was not provided to the Court) was read aloud during group therapy so that Respondent could be held accountable for his actions by the group. Having participated in over 100 group therapy sessions, the Court does not accept that Respondent now is unable to recall important details of his crime.

Finally, although minor when compared to his criminal conviction, the Court notes as a negative factor that Respondent has a history of smoking marijuana. Respondent admitted to smoking marijuana regularly in college and periodically after college, although he testified that he has not smoked since his arrest in 2019.

In denying relief as a matter of discretion, the Court acknowledges the positive equities in his favor. Respondent has resided in the U.S. since he was nine years old. Respondent has significant family ties in the United States, including parents, siblings, paternal grandparents, and numerous aunts, uncles, and cousins. Exh. 4, Tab G. The evidence shows that Respondent is close to his family. Respondent has a strong educational background and earned a full scholarship to TCU, where he obtained a Bachelor's Degree in Education in 2015. Exh. 4, Tab I. Respondent has a long history of employment that began in his teens, extended through college and post-college, up to the time of his detention by the Department. Respondent was teaching high school at the time of his arrest and was subsequently terminated. Respondent filed tax paperwork regularly. Exh. 4, Tab E. Respondent registered for Selective Service. Respondent was raised in the Church and subscribes to Christian teachings. Exh. 4, Tab H; stipulated testimony from Pastor Mendoza. There is evidence of Respondent's significant community involvement through church, high school, and college. Exh. 4, Tab J. Finally, Respondent provided favorable character letters and testimony from family, friends, and an employer, although it does not appear that any of these

Page **15** of **17**

A 098-102-097

Plaintiff's Exhibit "G"

individuals knew the details of his criminal offense at the time their character opinions were given, which lessens the weight of their opinions. Exh. 4, Tabs J-L; testimony of Mr. Cruz and Mr. Thomas.

Although a showing of hardship is not required, Respondent provided evidence to show that he would suffer hardship if removed to Mexico in the form of reduced economic opportunities and poor country conditions that stem from violence and corruption in Mexico. Exh. 4, Tab N. Respondent admitted that he was unaware of the impact of his conviction on employment opportunities in Mexico. He also provided evidence that his grandparents would suffer hardship if he was removed because he is the only grandchild they trust to assist with their private affairs, including social security paperwork, tax paperwork, and medical needs. Exh. 5, Tab C. However, his father testified that a niece has been assisting them since Respondent's detention. Respondent also provided a document regarding his father's ongoing medical issues, but this was not expounded upon during testimony. Exh. 5, Tab B.

Despite these positive equities, the Court cannot overlook the seriousness of his conviction for online solicitation of child for sexual conduct. The only evidence before the Court regarding impact to the minor child came in the form of testimony from the Respondent himself. He admitted that his actions likely caused significant trust issues for the victim and created problems within her family. He admitted she will likely suffer depression as a result of his actions. Whatever the actual impact to her, there is no doubt it is significant given Respondent's predatory actions. The Court emphasizes the recent nature of the conviction, the appalling nature of his conduct, and the Court's doubts regarding his acceptance of responsibility and rehabilitation. After balancing all negative and positive equities, the Court concludes the severe negative factors outweigh the positive and demonstrate his undesirability as a permanent resident of the United States. *See C-V-T-*, 22 I&N Dec. at 11; *Edwards*, 20 I & N Dec. at 195. This Court thus denies his application for LPR Cancellation of Removal under INA § 240A(a) as a matter of discretion.

## VII.    Voluntary Departure

The Court may, at its discretion, permit a respondent to voluntarily depart the United States if, at the conclusion of proceedings, the Court is satisfied that the respondent (1) was physically present in the United States for at least one year immediately preceding the service of the NTA; (2) is of good moral character, as defined by section 101(f) of the Act, for at least the five-year period immediately preceding the application for voluntary departure; (3) is not deportable as an aggravated felon or a terrorist under INA §§ 237(a)(2)(A)(iii) and 237(a)(4); and (4) has established by clear and convincing evidence that he has the means to depart the United States and intends to do so.  INA § 240B(b)(1); 8 C.F.R. § 1240.26(c)(1). The respondent must also possess a valid travel document. 8 C.F.R. § 1240.26(c)(2). In determining whether or not to grant a favorable exercise of discretion, the Court will look to prior immigration history, the nature of his or her entries, and violation of immigration or other laws. *Matter of Gamboa*, 14 I&N Dec. 244, 248 (BIA 1972).

Regarding good moral character under Section 101(f) of the Act, there is a catchall provision, which states that "[t]he fact that any person is not within any of the [per se categories] shall not preclude a finding that for other reasons such person is or was not of good moral

A 098-102-097

Plaintiff's Exhibit "G"

EOIR – 17 of 19

character." *Id.* Under the "catchall provision," the Court balances the favorable and unfavorable factors bearing on the applicant's character, such as family background, employment history, reputation in the community, lack of a criminal record, the nature, recency and seriousness of any criminal record, and rehabilitation or remorse for past crimes. *See generally*, *Castillo-Perez* 27 I&N Dec. 664 at 671 (A.G. 2019). "An alien's criminal record is highly probative of whether he possesses good moral character." *Id.* at 667.

Although the Department did not oppose voluntary departure as alternative relief, the Court denies Respondent's request. First, in light of his recent and serious criminal conviction involving a minor victim and resulting in Respondent having to register as a sex offender, the Court finds Respondent lacked good moral character during the requisite five-year period. Second, the Court denies voluntary departure as a matter of discretion for the reasons already detailed above.

Accordingly, after careful consideration, the following orders are hereby entered:

### ORDERS OF THE IMMIGRATION JUDGE

**IT IS HEREBY ORDERED** that Respondent's application for cancellation of removal for certain lawful permanent residents under INA § 240A(a) is **DENIED**;

**IT IS FURTHER ORDERED** that Respondent's Lawful Permanent Resident status be **RESCINDED**;

**IT IS FURTHER ORDERED** that Respondent's request for Post-Conclusion Voluntary Departure as alternative relief is also **DENIED**; and,

**IT IS FURTHER ORDERED** that the Respondent be **REMOVED** to **Mexico**.

**DATED:** September 15, 2021

SHELLY SCHOOLS
Digitally signed by SHELLY SCHOOLS
Date: 2021.09.15 16:22:00 -05'00'

**Shelly W. Schools**
U.S. Immigration Judge

**APPEAL RIGHTS:** Both Parties have the right to appeal the decision in this case. Any appeal is due at the Board of Immigration Appeals within thirty (30) calendar days of service of this decision. 8 C.F.R. § 1003.38.

**NOTICE:** If an applicant is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the applicant's departure pursuant to the order of removal, the applicant shall be subject to a civil monetary penalty of up to $813 for each day the applicant is in violation. *See* Section 274D of the Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2020).

A 098-102-097

EOIR - 18 of 19

Plaintiff's Exhibit "G"

RE:  GUERRA QUEZADA, JORGE ANTONIO

File:  A098-102-097

_____
                         CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL [M]  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [E]
TO: [ ] ALIEN  [E] ALIEN c/o Custodial Officer  [E] ALIEN's ATT/REP  [E] DHS
DATE:  9/15/2021  BY:  COURT STAFF ____L.GARZA____
    Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
_____

                                                                    C1

Plaintiff's Exhibit "G"