**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

16001.2:   **Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE**

**Issue Date:** November 10, 2015
**Effective Date:** November 10, 2015
**Superseded:** ICE Policy No. 16001.1: Superseding Guidance on Reporting and Investigating Claims to United States Citizenship (Nov. 19, 2009).
**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.** This Directive establishes ICE policy and procedures for ensuring that the potential U.S. citizenship of individuals encountered by U.S. Immigration and Customs Enforcement (ICE) officers, agents, and attorneys is immediately and carefully investigated and analyzed. The Immigration and Nationality Act of 1952, as amended (INA), sets forth the parameters for U.S. citizenship by virtue of birth in the United States. Additionally, the INA and various related statutes codify numerous avenues by which an individual may derive, acquire, or otherwise obtain U.S. citizenship other than through birth in the United States. As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U.S. citizen. While performing their civil immigration enforcement duties, ICE officers, agents, and attorneys may encounter individuals who are not certain of their citizenship status, who claim to be U.S. citizens, and/or for whom there are indicia warranting further examination to determine whether they may be U.S. citizens.

2. **Policy.** It is ICE policy to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE. ICE officers, agents, and attorneys should handle these matters with the utmost care and highest priority, recognizing that, while some cases may be easily resolved, many may require additional investigation and substantial legal analysis, particularly in light of the complexity of U.S. citizenship and nationality law.

   ICE personnel must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship, as well as when certain indicia of potential U.S. citizenship, as identified in this Directive, are present in a case even if the individual does not affirmatively make a claim to U.S. citizenship. In all situations where an individual's potential U.S. citizenship requires further investigation, Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI) personnel must consult with the Office of the Principal Legal Advisor's (OPLA) local Office of the Chief Counsel (OCC), as prescribed in this Directive.

Plaintiff's Exhibit "N"

3. **Definitions.** The following definitions apply for purposes of this Directive only.

3.1. **Indicia of Potential U.S. Citizenship.** Circumstances that tend to indicate that an individual may be a U.S. citizen. Indicia are not conclusive evidence that the individual is a U.S. citizen but factors that trigger the need for further investigation. With respect to individuals encountered by ICE, the existence of any of the following factors should lead to further investigation of the individual's U.S. citizenship:

1) ■
2) ■
3) ■
4) ■
5) ■
6) ■
7) ■
8) ■
9) ■
10) ■

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

Plaintiff's Exhibit "N"

3.2    **Individual Encountered by ICE.** An individual who is:

1) Arrested and taken into ICE custody pursuant to the agency's civil immigration authorities, including those released from such custody pending a decision on removal or execution of a removal order;

2) Subject to, or may become subject to, a request made by ICE that another law enforcement agency continue to hold the individual for up to 48 hours following the completion of his or her criminal custody, i.e., an "immigration detainer;"[1] and/or

3) In proceedings before the Executive Office for Immigration Review (EOIR) or administrative removal proceedings before ICE, including but not limited to pursuant to sections 217, 235, 238(b), or 241(a)(5) of the INA.

3.2.   **Probative Evidence of U.S. Citizenship.** A unique policy standard adopted by ICE meaning that the evidence before the agency tends to show that the individual may, in fact, be a U.S. citizen. U.S. citizenship need not be shown by a preponderance of the evidence for the agency to find that there is some probative evidence of U.S. citizenship.

4.     **Responsibilities.**

4.1.   **ERO Officers, HSI Agents, and OCC Attorneys** have responsibilities under Section 5.1 of this Directive.

4.2.   **ERO Field Office Directors (FODs), HSI Special Agents in Charge (SACs), and OPLA Chief Counsels** are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) prescribed in this Directive.

4.3.   **FODs** are responsible for ensuring that all state and local officers with delegated immigration authority pursuant to INA § 287(g) within their area of responsibility have the training and oversight necessary to understand and adhere to this Directive, and thoroughly investigate all U.S. citizenship claims made by individuals encountered by 287(g)-designated officers.

4.4.   **Headquarters (HQ) OPLA, ERO, and HSI** have responsibilities under section 5.1(3). (Headquarters Review).

4.5.   **The Executive Associate Directors for ERO and HSI, and the Principal Legal Advisor**, or their designees, are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) of this Directive.

---

[1] This includes individuals subject to the former Form I-247 (Immigration Detainer – Notice of Action), Form I-247D (Immigration Detainer – Request for Voluntary Action), Form I-247X (Request for Voluntary Transfer) when this form requests detention rather than simply notification, and/or any successor form serving the same or substantially similar process.

Plaintiff's Exhibit "N"

5. **Procedures/Requirements.** An ICE officer, agent or attorney must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship or, even in the absence of such a claim, when indicia of potential U.S. citizenship are present in a case. The ICE Directorate that first encounters the individual is generally responsible for identifying indicia of potential U.S. citizenship.

5.1. **Procedures for Investigating and Assessing Potential U.S. Citizenship.**

1) **Factual Examination.** The assessment of potential U.S. citizenship under this Directive must include a factual examination and a legal analysis and shall include a check of all available DHS data systems and any other reasonable means available to the officer. In general, the factual examination should be conducted by the ICE operational Directorate (ERO or HSI) that first encountered the individual. In cases where the OCC first encounters the individual, ERO should generally conduct the factual examination in coordination with the OCC.



a) ▮

b) ▮

c) ▮

d) ▮

e) ▮

---

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

Plaintiff's Exhibit "N"

f) ███████████████████████████████████

g) ███████████████████████████████████

2) **Preparing and Submitting Memorandum.** After the factual examination is completed, ERO or HSI (whichever conducted the factual examination) and the relevant OCC must jointly prepare and submit a memorandum for HQ review, using as a guide the attached HQ-approved template, which assesses the claim and recommends a course of action.

   a) Absent extraordinary circumstances, this memorandum must be submitted no more than one business day from the time ERO, HSI, or OPLA first becomes aware of a claim or indicia of potential U.S. citizenship if the individual is subject to an immigration detainer or is detained in ICE custody. In all other cases, the memorandum must be submitted as promptly as practicable.

   b) For purposes of such memoranda, the legal analysis must indicate whether, in the OCC's view:

      1) The evidence in the case strongly suggests that the individual is a U.S. citizen or his or her claim to U.S. citizenship is credible on its face;

      2) Some probative evidence indicates that the individual may be a U.S. citizen but the evidence is inconclusive; or

      3) No probative evidence indicates that the individual is a U.S. citizen.

   c) The memorandum must be clearly annotated as containing pre-decisional, privileged attorney-client communication, attorney work product, and sensitive personally identifiable information.

   d) Upon completion, the memorandum must be elevated via e-mail to the HQ OPLA Immigration Law and Practice Division at ███████████████ and either the HQ ERO Assistant Director for Field Operations at ███████████████████ or to the HQ HSI Domestic Operations Manager assigned responsibility for the relevant SAC office, as appropriate.

   e) Any significant change in circumstances in a case elevated to HQ should be reported in the same manner as outlined in the preceding subparagraph, as well as

Plaintiff's Exhibit "N"

to any previously assigned HQ points of contact, as an update to the original memorandum.

3) **Headquarters (HQ) Review.**

   a) HQ OPLA and either HQ ERO or HQ HSI will respond to the field with a decision on the recommendation within one business day of receipt of the memorandum by detained claimants and individuals subject to an immigration detainer. In all other cases a decision will be made as promptly as practicable.

4) **Detainer/Custody Determination.**

   a) In those cases involving individuals who fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive (cases involving strong/facially credible or probative evidence of U.S. citizenship):

      1) ICE should not lodge an immigration detainer against or arrest the individual.

      2) If ICE has already lodged an immigration detainer against the individual, it should be immediately cancelled.

      3) If the individual is already in ICE custody, he or she should be immediately released.

      4) If the individual has been released from ICE custody on conditions, those conditions should be re-evaluated in consultation with OPLA.

   b) Where the field's initial recommendation to HQ is that an individual falls within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive, it is not necessary to await HQ concurrence before cancelling an immigration detainer, releasing the individual from custody, or terminating conditions of release.

   c) On a case-by-case basis and in consultation with OPLA, an individual determined by ICE to fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive may be placed in removal proceedings on EOIR's non-detained docket to more conclusively resolve his or her immigration and citizenship status if reasons remain to believe that he or she is an alien present in the United States in violation of law.

   d) Where no probative evidence of U.S. citizenship exists (section 5.1(2)(b)(3) of this Directive) and probable cause exists that the individual is a removable alien, it is permissible to lodge an immigration detainer in the case, arrest the individual, and/or process the individual for removal.

   e) In any case in which there is uncertainty about whether the evidence is probative of U.S. citizenship, ICE should not detain, arrest, or lodge an immigration

  detainer against the individual and should cancel any immigration detainer already lodged by ICE.

 f) Where ICE determines that it will not proceed further with an enforcement action due to the U.S. citizenship claim, the individual should be informed that he or she may attempt to obtain proof of U.S. citizenship by submitting a passport application to the Department of State (http://travel.state.gov/passport) or filing an Application for Certificate of Citizenship, Form N-600, with U.S. Citizenship and Immigration Services (www.uscis.gov/n-600).

5) **Case Management.**

 a) ICE officers and agents will make a notation in the appropriate database(s) (e.g., ENFORCE Alien Booking Module and/or Alien Removal Module), and place a copy of the memorandum and resulting decision, properly marked as containing attorney work product, attorney-client communication, and sensitive personally identifiable information in the individual's A-file, if one already exists.

 b) ICE attorneys will save the memorandum in the PLAnet case management system and document the resulting HQ decision and other information about the claim by completing the "USC Claims" section in PLAnet.

6. **Recordkeeping.** Records generated pursuant to this directive are maintained in the Alien File, Index, and National File Tracking System of Records, 76 Fed. Reg. 34233 (June 13, 2011), the General Counsel Electronic Management System (GEMS), 74 Fed. Reg. 41914 (August 19, 2009), the Immigration and Enforcement Operational Records (ENFORCE), 75 Fed. Reg. 23274 (May 3, 2010), and any other applicable system. The memorandum and resulting HQ decision will be also be saved in PLAnet.

7. **Authorities/References.**

7.1. Immigration and Nationality Act (INA) § 101(b) and (c).

7.2. INA §§ 301 - 303.

7.3. INA §§ 306 - 309.

7.4. INA § 316.

7.5. INA §§ 319 - 320.

7.6. INA § 322.

7.7. INA §§ 328 - 329.

---

**Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE**

Plaintiff's Exhibit "N"

8

7.8. Section 303 of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub. L. No. 94-241, 90 Stat. 263, 266 (set out as a note to 48 U.S.C. § 1801).

8. **Attachments.**

8.1. Sample – USC Claims Memorandum Template.[2]

9. **No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create or diminish any rights, substantive or procedural, enforceable at law or equity by any party in any criminal, civil, or administrative matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of the Department of Homeland Security.

*[signature]*

Sarah R. Saldaña
Director
U.S. Immigration and Customs Enforcement

---

[2] This template may be periodically updated by OPLA, as new legal and policy developments warrant. In such circumstances, OPLA will work with the Office of Policy to have the updated template posted to the ICE Policy Manual online environment.

---

**Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE**

Plaintiff's Exhibit "N"